[No. D048583. Fourth Dist., Div. One. Aug. 27, 2007.]

ARLEEN FREEMAN et al., Plaintiffs and Appellants, v.
ALEXANDER SCHACK, Defendant and Respondent.

### COUNSEL

Barry & Associates and David Barry for Plaintiffs and Appellants.

Law Offices of Anthony A. Ferrigno, Anthony A. Ferrigno; and Alexander M. Schack for Defendant and Respondent.

### OPINION

**O'ROURKE, J.**—Plaintiffs Arleen Freeman and James Alexander appeal from a judgment entered after the trial court granted defendant Alexander Schack's special motion to strike their complaint under Code of Civil Procedure section 425.16.[1] Plaintiffs sued Schack for breach of contract, professional negligence and breach of fiduciary duty based on allegations that he had entered into a contract by which he assumed attorney-client duties toward plaintiffs but abandoned them in order to represent adverse interests in the same and different litigation, thus breaching the contract as well as the fiduciary duties owed them. The trial court granted Schack's special motion to strike as to all causes of action on grounds plaintiffs' causes of action stemmed from petitioning activity and plaintiffs did not demonstrate a probability of prevailing on their causes of action because the *Noerr-Pennington* doctrine[2] provided a complete defense.

Plaintiffs contend the trial court erred in granting the special motion to strike because (1) Schack did not meet his burden of proving his actions—which constitute violations of State Bar Rules of Professional Conduct—were constitutionally protected; (2) plaintiffs satisfied their burden of showing a likelihood of prevailing on the merits; and (3) the *Noerr-Pennington* doctrine does not apply and cannot provide Schack with a defense. We conclude

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated. Section 425.16 is commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

[2] *Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523] (*Noerr*); *Mine Workers v. Pennington* (*Pennington*) (1965) 381 U.S. 657 [14 L.Ed.2d 626, 85 S.Ct. 1585]; see *Freeman v. Lasky, Haas & Cohler* (9th Cir. 2005) 410 F.3d 1180, 1183.)

section 425.15 does not apply to plaintiffs' causes of action and on that basis reverse the judgment with directions that the trial court deny the special motion to strike.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are real estate agents in San Diego County who were represented by Attorney David Barry in filing lawsuits against Sandicor and other entities for alleged violations of California's antitrust laws and other assertedly unlawful acts. (See *Freeman v. San Diego Assn. of Realtors* (1999) 77 Cal.App.4th 171, 177–178 [91 Cal.Rptr. 534]; *California Assn. of Realtors v. Barry* (D048441, May 22, 2007) [nonpub. opn.].)[3] Sandicor operated a real estate sales multiple listing service in San Diego County. (*Freeman,* 77 Cal.App.4th at p. 177.) In March 2003, plaintiffs succeeded in reversing a summary judgment on appeal in the Ninth Circuit in a federal district court case, *Freeman et al. v. San Diego County Board of Realtors,* United States District Court, case No. 98-CV-0139TW (JAH) (hereafter *Freeman II*).[4] On the day the Ninth Circuit filed its decision, Schack telephoned Barry and asked if Barry could use his help in prosecuting the case. Schack described himself as a class action attorney who did antitrust litigation and explained his credentials in detail. Barry accepted Schack's offer, telling Schack about the arrangement he had with other attorneys and explaining the division of contingent fees in the event of success. During the course of several conversations that day, Barry and Schack discussed the overall strategy of plaintiffs' case, including matters such as getting plaintiffs certified as class representatives and an early trial on damages.

The next week, Barry drafted a fee agreement for the attorneys who would represent plaintiffs in what he referred to as "phase 2" of the case: the legal proceedings following the Ninth Circuit's decision. Those attorneys were Barry, Schack, Attorney Richard Johnson and occasionally Ken Frost. Barry sent Schack a copy of an earlier fee agreement and, over several revisions, Barry, Johnson and Schack negotiated the language for the phase 2 fee agreement. The versions of that fee agreement confirmed that the phase 2 attorneys had attorney-client duties to plaintiffs.

In April 2003, Barry, Johnson and Schack signed an "Attorney Association and Fee Sharing Agreement" (the Fee Sharing Agreement) relating to the pending *Freeman II* litigation. The Fee Sharing Agreement contains provisions addressing the legal relationship between and respective responsibilities

---

[3] We take judicial notice of our files and prior opinions relating to this matter. (Evid. Code, §§ 452, subds. (a), (d)(1), 459.)

[4] Throughout, Schack refers to the district court action as *Freeman II*. We adopt that designation for ease of reference. The Ninth Circuit's decision appears in *Freeman v. San Diego Assn. of Realtors* (9th Cir. 2003) 322 F.3d 1133.

of Barry and the other phase 2 attorneys. In particular, the Fee Sharing Agreement stated that the phase 2 attorneys were not parties to the existing attorney-client relationships between Barry and plaintiffs, but "agree they will take no action which would breach any obligation owed to any client(s)" and "acknowledge that, in undertaking the services covered by this agreement, they are subject to all responsibilities and obligations owed by attorneys to their clients under applicable law . . . as to each and every client who is or hereafter becomes a plaintiff in [*Freeman II*], and for whom a signed written agreement is provided by Barry, to the extent each respective phase 2 attorney provides services hereunder."

At various times during March, April and May 2003, Barry and Schack communicated by telephone, e-mail and letter about various matters concerning the case, including class certification, damages proof and a proposed damages expert, pending motions and settlement strategies.[5] On June 3, 2003, Schack emailed Barry and Johnson concerning his involvement in the cases. He wrote: "In signing the agreement to split fees, it was intended that all clients would give their written consent before the agreement was effective. Before that consent was obtained, I deemed it necessary to withdraw from the agreement based on certain confidential circumstances. I will continue to assist you in any way necessary to benefit my client and the class, and look for a successful resolution of these matters."

Barry and Schack continued their communications through April 2004. In April 2004, Schack and Attorney Dan Mogin, with whom Schack frequently worked, filed a motion on behalf of "proposed plaintiff in intervention" Alan Hemphill to have Hemphill intervene as a representative of the proposed class in *Freeman II*. In part, Schack and Mogin argued Hemphill, a purchaser and end user of multiple listing services in San Diego who was "acting independently of the Freeman Plaintiffs," satisfied typicality and other requirements to represent the class unlike plaintiffs, who were inadequate representatives.

In May 2004, Freeman, Schack, Barry, and Mogin participated in a mediation planning session in Los Angeles. At the mediation, Schack and Mogin began proposing that *Freeman II* should be settled for coupons to the class members valued at approximately $30 or less. The settlement would not provide for real estate agents who had dropped out of the industry since 1994. It would provide for a $1 million payment to Schack and Mogin. Freeman and Barry expressed their opposition to the idea. After the mediation, Barry

---

[5] Barry specifically recounts his communications and their subjects in his declaration filed in support of a motion to disqualify Schack from the *Freeman II* action; that declaration is an exhibit to plaintiffs' papers in opposition to Schack's section 425.16 special motion to strike and provides the basis for much of our factual background.

ceased conveying privileged or confidential information and work product to Schack because Barry believed Schack was representing interests adverse to plaintiffs.

In June 2004, Barry attended a judicial settlement conference at which Mogin and Schack appeared representing Hemphill. Before they addressed the court, Mogin and Schack told Barry and Freeman that an agreement in principle had been worked out by which the defendants would provide class members free use of Sandicor services for four consecutive Januarys, but members who left real estate without using that opportunity would forfeit those usage rights. The settlement did not provide for members who left the real estate business. Mogin and Schack stated they expected attorney fees to be about $1 million to be paid in cash. Moments later, the magistrate judge presiding over the settlement conference confirmed that an agreement in principle had been reached with the *Freeman II* defendants. Barry and Freeman advised the court they were strongly against such a settlement; Barry described the assets available to the *Freeman II* defendants with which they could fund a fair settlement.

Several days after the settlement conference, Barry wrote to Schack demanding that he and his client immediately withdraw from *Freeman II* or Barry would move to disqualify them from the lawsuit based on current conflicts of interest in their representation of Hemphill, Freeman and Alexander. Barry eventually unsuccessfully brought a disqualification motion. Schack and Mogin filed a new federal court action on Hemphill's behalf and obtained preliminary approval of a settlement class that excluded Freeman and Alexander. Freeman and Alexander settled and dismissed their action in November 2004.

In January 2005, plaintiffs, on behalf of themselves and a putative class, sued Schack, Mogin and other entities for breach of contract, professional negligence and breach of fiduciary duty. They alleged Schack had assumed attorney-client duties to plaintiffs in March 2003, executed a written agreement in April 2003 reflecting his assumption of such duties and pledging, among other things, to use his best efforts to obtain a full recovery of damages to the class, but breached the agreement by representing Hemphill, filing a new lawsuit on Hemphill's behalf, and concluding the Hemphill litigation.

Schack moved to strike the complaint under section 425.16 and joined in Mogin's own section 425.16 motion. He argued plaintiffs' causes of action were based on written or oral statements or writings made before a judicial proceeding, written or oral statements or writings made in connection with an issue under consideration or review by a judicial body, or other conduct in

furtherance of the exercise of the constitutional right of petition. (§ 425.16 subd. (e)(1), (2), (4).) On this prong, Schack argued that "all of the conduct alleged in the Complaint arose out of petitioning activity, to-wit, it all relates to the two underlying class actions." Turning to the second inquiry under section 425.16, Schack further argued plaintiffs could not demonstrate a probability of prevailing because the *Noerr-Pennington* doctrine—barring claims having as its gravamen constitutionally protected activity—provided a complete defense and immunity for Schack's conduct relating to the prosecution of *Freeman II* and the Hemphill litigation, in particular, his decision to accept an offer of settlement. Schack also demurred to the complaint. Schack filed a joint opposition to the demurrers and section 425.16 motions to strike.[6]

The court initially sustained the demurrers and deemed the section 425.16 motions moot. On reconsideration, however, it granted the section 425.16 motion on grounds plaintiffs' causes of action "stem from . . . the two underlying federal class actions" and thus constituted petitioning activity, and plaintiffs did not demonstrate a probability of prevailing on their causes of action because the *Noerr-Pennington* doctrine provided a complete defense. Plaintiffs filed the present appeal.

## DISCUSSION

### I. *Section 425.16/Appellate Standard of Review*

■ "[S]ection 425.16, the anti-SLAPP statute, provides in relevant part: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' [Citation.] Under this statute, the party moving to strike a cause of action has the initial burden to show that the cause of action 'aris[es] from [an] act . . . in furtherance of the [moving party's] right of petition or free speech.' [Citations.] Once that burden is met, the burden shifts to the opposing party to demonstrate the 'probability that the plaintiff will prevail on the claim.' [Citations.] 'To satisfy this prong, the plaintiff must "state[] and substantiate[] a legally sufficient claim." [Citation.] "Put another way, the

---

[6] That portion of plaintiffs' opposition relating to Schack's section 425.16 motion reads as follows: "Schack does not deny that he had attorney-client duties to plaintiffs. Nor does he deny that he acted adversely to plaintiffs in the San Diego Realtors case. He does not deny that abandoned [*sic*] Freeman and Alexander to pursue the interests of Hemphill adversely to Freeman and Alexander. As described above under the Mogin motion to strike, the malpractice case against Schack is not subject to a special motion to strike and must be denied."

plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " ' " (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 964–965 [12 Cal.Rptr.3d 54, 87 P.3d 802].)

We review de novo the court's order granting Schack's section 425.16 special motion to strike. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638].) "We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Ibid.*)

## II. *Schack's Threshold Prima Facie Burden*

Speaking to the first prong, the California Supreme Court explains that "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] . . . [T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) It is "the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494].)

Plaintiffs contend that by accepting attorney-client responsibilities toward Freeman and Alexander, and also by representing Hemphill, Schack violated rule 3-310(C) of the State Bar Rules of Professional Conduct, providing that an attorney "shall not, without the informed written consent of each client . . . [¶] . . . [¶] [a]ccept or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . ." (See *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 282 [36 Cal.Rptr.2d 537, 885 P.2d

950].)[7] Plaintiffs argue alternatively that Schack's actions violated rule 3-310(E) of the State Bar Rules of Professional Conduct, which prohibits consecutive representations adverse to a former client.[8] They rely upon *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921 [116 Cal.Rptr.2d 187], *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624 [7 Cal.Rptr.3d 715] (*Jespersen*), and *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 [20 Cal.Rptr.3d 621] (*Benasra*) to argue that Schack's actions in representing Hemphill in litigation were not constitutionally protected because one of their core claims is that Schack represented conflicting interests in the same cases and doing so, went beyond mere petitioning activity by sharing confidential information, advising Hemphill and representing him.

The allegations of plaintiffs' complaint assist us in determining whether the principal thrust or gravamen of the causes of action is protected petitioning activity. In their background allegations, plaintiffs allege that after signing the Fee Sharing Agreement, Schack assisted Barry in defending against requests for rehearing, a petition for certiorari, and efforts to obtain summary judgment in *Freeman II* after the Ninth Circuit remanded the case. They allege that over the course of a year, Barry had communicated their confidential and privileged information to Schack, divulging confidential client information and work product on various matters including a draft complaint against other defendants, an effort to file a motion to stay the Ninth Circuit's mandate, a fee application in the Ninth Circuit, settlement strategy and future handling of the case, proposed damages proof, and plaintiffs' proposed damages experts. They allege that "[u]nbeknownst to plaintiffs, Mogin & Schack recruited an individual, Alan Hemphill, to act as a class representative who had no interest in obtaining any real benefits for the class. Defendants initially announced their representation of Hemphill but gave no indication that Hemphill's and defendants' interests were adverse to plaintiffs' interests. Plaintiffs discovered the adversity of Hemphill in approximately May of 2004, when defendants espoused, on Hemphill's behalf, a settlement plan that was wholly adverse to the settlement plan that plaintiffs had long advocated." Plaintiffs allege they had never consented in writing to Schack's representation of adverse interests.

---

[7] Plaintiffs point out while the evidence is conflicting as to when Schack actually began representing Hemphill's interests, the timing issue is irrelevant because it is undisputed that as of April 9, 2003, when he signed the Fee Sharing Agreement, Schack was representing plaintiffs as well as Hemphill, and adversity arose between them no later than the April to July timeframe of 2004, when Schack on Hemphill's behalf moved to intervene as a putative class representative in *Freeman II*.

[8] Rule 3-310(E) of the State Bar Rules of Professional Conduct provides: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Plaintiffs further allege that in July 2004, Schack "secretly filed a class action suit" in the same federal court on Hemphill's behalf, about which plaintiffs did not learn until later, and also "secretly settled the *Hemphill* case, and . . . secretly obtained preliminary court approval of class certification of Hemphill as class representative." Plaintiffs continue, "Defendants breached their agreement by which they agreed to act as attorneys to aid plaintiffs in obtaining cash and Sandicor [*sic*] for the benefit of the class. Plaintiffs never authorized defendants to conclude the *Hemphill* settlement." Plaintiffs set out allegations explaining how Schack's representation of Hemphill was adverse: (1) plaintiffs wanted a substantial recovery and yet Schack settled the *Hemphill* case for only about 3 percent of the recovery plaintiffs sought; (2) Schack actively campaigned for Hemphill, rather than plaintiffs, as a class representative; (3) defendants' settlement contained no protection against future price increases; and (4) the *Hemphill* settlement required verified claims.

Plaintiffs' breach of contract cause of action alleges that Schack breached the Fee Sharing Agreement by accepting representation in the *Hemphill* case that was adverse to plaintiffs' interest. Realleging all of the background and breach of contract allegations, plaintiffs' negligence cause of action alleges Schack was "negligent with regard to the way [he] represented plaintiffs." Finally, in their breach of fiduciary duty cause of action, plaintiffs likewise incorporate all of the preceding paragraphs and allege Schack "abandoned plaintiffs, accepted the adverse representation of Hemphill, and sold out the victim class so that defendants could receive an attorney's fee of $1.125 million as part of the *Hemphill* settlement." They allege Schack "committed perjury under the laws of the State of California when [he] asserted to the federal court that Hemphill requested defendants to represent them on March 12, 2003; and committed obstruction of justice when they procured the either perjurious or intentionally misleading declaration of Alan Hemphill that he asked defendants to represent him, when in fact it was defendants who sought out and requested Hemphill to act as nominal plaintiff." They conclude by alleging that if the *Hemphill* settlement is approved and Schack receives his fee from the federal court, he "will have received such fee through the violation of [his] fiduciary duties to plaintiffs."

There is no doubt plaintiffs' causes of action have as a major focus Schack's actions in representing Hemphill in *Freeman II*, filing a new action on Hemphill's behalf and settling Hemphill's action. However, the fact plaintiffs' claims are related to or associated with Schack's litigation activities is not enough. "Although a party's litigation-related activities constitute 'act[s] in furtherance of a person's right of petition or free speech,' it does not

follow that any claims associated with those activities are subject to the anti-SLAPP statute. . . . A claim 'arises from' an act when the act ' " 'forms the basis for the plaintiff's cause of action' . . . .' ' [Citation.] '[T]he "arising from" requirement is not always easily met.' [Citation.] A cause of action may be 'triggered by' or associated with a protected act, but it does not necessarily mean the cause of action *arises* from that act. [Citation.] As our Supreme Court noted: 'California courts rightly have rejected the notion "that a lawsuit is adequately shown to be one 'arising from' an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself." ' " (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537–1538 [52 Cal.Rptr.3d 712].)

These principles are evident in *Benasra* and *Jespersen*. In *Benasra, supra,* 123 Cal.App.4th 1179, the court held section 425.16 did not apply to a former client's suit against a law firm for breach of their duty of loyalty. The law firm, which had previously represented the plaintiff, represented the plaintiff's opponent in an arbitration proceeding. Although pursuit of arbitration proceedings is a protected activity, the court nonetheless rejected the defendants' argument that the claims against them were based on written or oral statements made on the client's behalf in the arbitration. (*Benasra,* 123 Cal.App.4th at pp. 1186–1187.) The Court of Appeal pointed out the claims were in fact based on rule 3-310(C) of the State Bar Rules of Professional Conduct and that "a breach of duty of loyalty based on violation of these rules occurs whether or not confidences are actually revealed in the adverse action." (*Benasra,* at p. 1187.) The court reasoned: "The breach occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client. . . . In other words, once the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty. The breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it. Evidence that confidential information was actually used against the former client in litigation would help support damages, but is not the basis for the claim. . . . [Plaintiffs'] claim is not based on 'filing a petition for arbitration on behalf of one client against another, but rather, for failing to maintain loyalty to, and the confidences of, a client.' " (*Id.* at p. 1189; see also *Kolar v. Donahue, McIntosh & Hammerton, supra,* 145 Cal.App.4th at pp. 1538–1539.)

██ In *Jespersen*, the Court of Appeal affirmed the denial of a section 425.16 motion brought by attorneys who were sued for malpractice. (*Jespersen, supra,* 114 Cal.App.4th at p. 627.) In their complaint, the

plaintiffs alleged they had retained the defendants to represent them in a civil lawsuit but defendants did so negligently, resulting in a court order requiring the plaintiffs to provide verified responses to discovery requests without objections. (*Jespersen, supra,* 114 Cal.App.4th at pp. 627–628.) The Court of Appeal held "[t]he alleged malpractice did not arise out of the attorneys' First Amendment right to petition. Rather the malpractice alleged is appellants' negligent failure to protect their clients' rights in the underlying action." (*Id.* at p. 627.) *Jespersen* explained that while an attorney who is made a defendant based upon written or oral statements made on behalf of clients in a judicial proceeding or in connection with an issue under review by a court would have standing to bring a motion under section 425.16, "[i]t does not follow . . . that a legal malpractice action may be subject to a SLAPP motion merely because it shares some similarities with a malicious prosecution action and involves attorneys and court proceedings. '[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity' . . . [a]nd a moving defendant's burden . . . is not met simply by showing that the *label* of the lawsuit appears to involve the rights of free speech or petition; he or she must demonstrate that the *substance* of the plaintiff's cause of action was an act in furtherance of the right of petition or free speech." (*Jespersen,* 114 Cal.App.4th at p. 630, citation omitted.)

The *Jespersen* court "discern[ed] that appellants' conduct allegedly consisted of: (1) a *failure* to serve timely discovery responses, resulting in a waiver of objections pursuant to section 2031, subdivision (*l*); (2) a *failure* to comply with a court order to serve responses without objections; and (3) a *failure* to comply with a second court order. Thus, it appears that the alleged attorney malpractice did not consist of any act in furtherance of anyone's right of petition or free speech, but appellants' negligent *failure* to do so on behalf of their clients." (*Jespersen, supra,* 114 Cal.App.4th at p. 631.) Further, the appellate court rejected an argument by one of the defendants, who contended "the *evidence* of [her] conduct, a declaration she filed in the underlying action, is the protected free speech or petition from which [plaintiffs'] cause of action arises." (*Jespersen,* at p. 631.) The court stated: "Although [appellant's] logic escapes us, it is apparently based upon the fact that such evidence was a written statement filed in a judicial proceeding. [Citation.] The declaration was filed in support of a motion submitted by appellants on behalf of respondents pursuant to section 473 to set aside the default. In it, [appellant] essentially admitted that she continued to apply her own interpretation to the discovery request, although it was at odds with opposing counsel's and the court's, and that in order to protect her clients' privacy, she continued to refuse to produce certain financial documents. Thus, she admitted having effectively interposed an objection (privacy) in direct conflict with the court's order." (*Jespersen,* at pp. 631–632.)

The *Jespersen* court concluded, "respondents' cause of action is not based on . . . any of appellants' declarations. Appellants have not been sued for having negligently filed declarations admitting their malpractice, but for their failure to comply with a discovery statute and two court orders to do so. Appellants have failed to demonstrate that such conduct amounts to constitutionally protected speech or petition, and we reject their attempt to turn garden-variety attorney malpractice into a constitutional right. Thus, we need not consider whether respondents demonstrated a probability of prevailing on the claim." (*Jespersen, supra,* 114 Cal.App.4th at p. 632.)[9]

 We agree with plaintiffs that the principal thrust of the conduct underlying their causes of action is not Schack's filing or settlement of litigation. Stated another way, the "activity that gives rise to [Schack's] asserted liability" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 [124 Cal.Rptr.2d 530, 52 P.3d 703], italics omitted) is his undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed them in connection with the *Freeman II* litigation. "[I]f the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion." (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414 [9 Cal.Rptr.3d 242].) In our view, plaintiffs' allegations concerning Schack's filing and settlement of the Hemphill litigation are incidental to the allegations of breach of contract, negligence in failing to properly represent their interests, and breach of fiduciary duty arising from his representation of clients with adverse interests.

 Schack's arguments do not convince us otherwise. Seeking to distinguish *Benasra* and *Jespersen,* he maintains the complaint "makes clear" that he is being sued for secretly "selling out the class," which he argues was found not true by the court in the Hemphill litigation, thus eliminating any

---

[9] With regard to *Jespersen*'s analysis, we agree with the observations of the court of appeal in *Kolar v. Donahue, McIntosh & Hammerton, supra,* 145 Cal.App.4th at page 1539: "*Jespersen* implies that an attorney may invoke the protection of the anti-SLAPP statute against a malpractice claim where the alleged malpractice was committed in connection with petitioning activity, such as the filing of a pleading, but not when the attorney fails to act, such as failing to respond to discovery or court orders. Under this logic, the anti-SLAPP statute would apply to a malpractice claim alleging the attorney filed an answer omitting a critical defense, but not where the attorney failed to file an answer at all. In the former case, however, the malpractice claim arises not from the filing of the answer, but from the attorney's failure to provide competent legal representation. That the malpractice claim was triggered by the filing of the defective pleading does not upset the basic principle that attorney malpractice is not a protected right."

possible breach of the duty of loyalty.[10] He argues the documents presented in support of his motion "show that there is no truth to [plaintiffs'] allegations as to them individually . . . ." These merits based arguments have no place in our threshold analysis of whether plaintiffs' causes of action arise from protected activity. Where Schack cannot meet his threshold showing, the fact he "might be able to otherwise prevail on the merits under the 'probability' step is irrelevant." (*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 32 [1 Cal.Rptr.3d 390].) Nor do his arguments show how his evidence defeats plaintiffs' claims as a matter of law. (*Soukup v. Law Offices of Herbert Hafif*, supra, 39 Cal.4th at p. 269, fn. 3.) Further, it is not our task to resolve factual disputes or make credibility determinations on Schack's section 425.16 motion; we accept plaintiffs' evidence as true for purposes of our analysis.

Schack also relies upon *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658 [35 Cal.Rptr.3d 31], in which the court found some causes of action in an attorney malpractice case subject to section 425.16. However, *Peregrine Funding* itself recognized that in cases where protected activities and nonprotected activities are alleged in the same cause of action, the cause of action is not subject to section 425.16 if the protected activities are "merely incidental" or "collateral" to the nonprotected activities. (*Peregrine Funding*, at p. 672.) Although *Peregrine Funding* questioned *Benasra*, supra, 123 Cal.App.4th 1179, it was on the premise that *Benasra* "focus[ed] on the theoretical time that a breach of duty occurs, as opposed to the specific allegations of wrongdoing in the operative complaint." (*Peregrine Funding*, 133 Cal.App.4th at p. 674.) We need not decide whether we agree with *Peregrine Funding*'s characterization of *Benasra*; we prefer to apply the analysis set out by the California Supreme Court requiring us to focus upon the "activity that gives rise to [Schack's] asserted liability." (*Navellier v. Sletten*, supra, 29 Cal.4th at p. 92, italics omitted; see also *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1244 [29 Cal.Rptr.3d 521].)

For the foregoing reasons, we conclude plaintiffs' causes of action were not based on, and do not arise from, an exercise of the constitutional rights of petition or free speech as enumerated in section 425.16, subdivision (e). Consequently, the burden never shifted to plaintiffs to demonstrate a probability of prevailing on the merits against Schack.

---

[10] District Court Judge Benitez's order states that Hemphill and his class counsel fairly and adequately represent the settlement class and satisfy the requirements to be representatives of and counsel to the settlement class.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter an order denying the Code of Civil Procedure section 425.16 special motion to strike. Plaintiffs shall recover their costs on appeal.

Nares, Acting P. J., and Aaron, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 28, 2007, S157019.