Filed 11/18/21  Urick v. Elkins Kalt Weintraub Reuben Gartside CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DANA URICK et al., | B310056 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 20STCV17462) |
| v. | |
| ELKINS KALT WEINTRAUB REUBEN GARTSIDE, LLP et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, David J. Cowan, Judge.  Affirmed.

Elkins Kalt Weintraub Reuben Gartside, Jeffrey K. Riffer, and Julie Z. Kimball for Defendants and Appellants.

Bohm Wildish & Matsen, James G. Bohm; Ulwelling Law and Lauren E. Saint for Plaintiffs and Respondents.

* * * * * *

A woman and her son sued the lawyers who represented her in probate litigation for legal malpractice and related claims due to an alleged conflict of interest and allegedly bad advice. The trial court denied the lawyers' motion to dismiss the entire lawsuit under our anti-SLAPP law (Code Civ. Proc., § 425.16),[1] because their alleged misconduct did not constitute activity protected by the anti-SLAPP law.  This was correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

In 2013, Allyne L. Urick created the Allyne L. Urick Trust (the Trust), a primary asset of which was a three-story apartment building held as part of a joint venture.  Upon Allyne's death, the Trust provided for a lifetime annuity to three people with the remainder going to her deceased husband's alma mater; the three people were (1) her daughter, Dana Urick (Dana), (2) her son, Willis E. Urick III (Willis), and (3) her grandchild (and Dana's son), Trentyn Urick-Stasa (Trentyn).[2]

---

[1]    "SLAPP" is short for strategic lawsuit against public participation.

All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]    Because many of these individuals share the same last name, we use first names for clarity.  We mean no disrespect.

2

When Allyne died in August 2015, Dana became the Trust's trustee. As trustee, Dana (1) filed a February 2016 petition to reform the Trust to eliminate the bequests to Willis and the school and instead to split the Trust's $14 million corpus between herself and her son Trentyn, and (2) in March 2017, triggered—but did not consummate—the procedures to buy-out the interests of Lucien Seifert (Seifert), the other joint venturer in the apartment building.

These actions had consequences. In response to her petition for reformation, Willis in May 2016 and thereafter filed various petitions to disinherit Dana and her son under the Trust's "no contest" clause and to have Dana removed as trustee. In response to the invoked but aborted buy-out, Seifert sued Dana in November 2017 and Dana cross-complained against Seifert in December 2017.

In her role as trustee of the Trust, Dana retained the law firm Elkins Kalt Weintraub Reuben Gartside, LLP and two of its lawyers (collectively, defendants) in November or December 2017 to "provide [her] guidance" and "legal representation" "in matters related to trust administration and in litigation concerning the Trust." During this period, Dana simultaneously employed separate counsel to aid her in the ongoing litigation, as her cross-complaint against Seifert filed in December 2017 and an amended petition for reformation she filed in May 2018 were each filed by counsel other than defendants.

In January 2020, the probate court removed Dana as trustee of the Trust and appointed successor cotrustees after concluding that (1) her pursuit of the reformation petition, which was to her personal advantage, constituted a conflict of interest, and (2) her position in the Seifert litigation might "cause major

3

tax problems for the Trust" that would harm the Trust's other beneficiaries.

## II.    Procedural Background

### A.    *Complaint*

On May 7, 2020, Dana (in her individual capacity rather than as trustee for the trust) and Trentyn (with Dana serving as his guardian ad litem) (collectively, plaintiffs) sued defendants for (1) legal malpractice, (2) breach of contract due to failure to provide adequate legal representation, and (3) interfering with a prospective economic advantage because their inadequate legal representation caused plaintiffs to "los[e]" out on the "financial benefits" flowing from Dana's role as trustee and, possibly, both plaintiffs' status as beneficiaries.[3]

Although plaintiffs' complaint makes general allegations that defendants "negligently and carelessly provided legal services and advice . . . which included . . . their filing of pleadings and other documents," plaintiffs go on to allege the following "specific breaches" of defendants' duty to provide adequate legal representation:  (1) defendants did not disclose that another lawyer at the firm was representing Seifert in the ongoing litigation between Seifert and the Trust, which required Dana to scramble to find new counsel in the Seifert litigation when Seifert attempted to disqualify defendants, and (2) defendants gave her bad "advice" to continue pursuing her previously filed reformation petition, which may result in her (a) personally paying a surcharge for the Trust's expenditures paying defendants' fees, and (b) being excluded from the Trust under its no contest clause.

---

[3]    Dana has brought malpractice actions against four other law firms that had represented her in the Trust proceedings.

**B.** *Anti-SLAPP motion*

Defendants filed a special motion to strike plaintiffs' entire complaint under the anti-SLAPP law, arguing that (1) plaintiffs' claims fall within the ambit of the law because they "rest entirely on" defendants' "litigation-related conduct," and (2) plaintiffs' claims must be dismissed (and hence lack minimal merit) because defendants cannot defend themselves unless the successor cotrustees waive the attorney-client privilege running between the Trust and its lawyers.

After further briefing and two hearings, the trial court issued a written ruling denying the anti-SLAPP motion.[4] The court reasoned that plaintiffs' claims did not "arise from" activity protected by the anti-SLAPP law because "the primary thrust of [plaintiffs'] claims is that [d]efendants breached their professional and ethical duties . . . by engaging in conflicted representation in the *Seifert* action and providing damaging and negligent legal advice in the *Urick* trust action," neither of which was based on any "litigation activities." In light of this holding, the court declined to issue a definitive ruling on whether plaintiffs' claims had minimal merit.

**C.** *Appeal*

Defendants filed this timely appeal.

### DISCUSSION

Defendants argue that the trial court erred in denying the special motion to strike under the anti-SLAPP statute. Because

---

4 In the midst of briefing on the anti-SLAPP motion, plaintiffs filed a first amended complaint. The trial court concluded that the filing of an amended complaint did not moot the anti-SLAPP motion to the original, superseded complaint, and defendants do not challenge that ruling on appeal.

we independently review a trial court's anti-SLAPP analysis (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*)), we are not bound by its rationale.

## I. Governing Law

### A. *Anti-SLAPP law, generally*

Section 425.16 was created "to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1217 (*PrediWave*); § 425.16, subd. (a).) To effectuate this purpose, the trial court is empowered to strike a claim if it answers "yes" to the first question and "no" to the second question: "(1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' [citation], and, if so, (2) has the nonmoving party 'established . . . a probability that [they] will prevail' on the challenged cause of action by showing that the claim has 'minimal merit' [citations]?" (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 887.) The first question—that is, whether a cause of action arises from protected activity—"turns on two subsidiary questions: (1) What conduct does the challenged cause of action 'arise[] from'; and (2) is that conduct 'protected activity' under the anti-SLAPP statute?" (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 698 (*Mission Beverage*).)

"A cause of action 'arises from' protected activity when 'the cause of action *itself* is '*based on*' protected activity. [Citations.] Whether a cause of action is itself based on protected activity turns on whether its "'*principal thrust or gravamen*'"" is protected activity—that is, whether the "'core injury-producing conduct'" warranting relief under that cause of action is protected

activity." (*Mission Beverage, supra*, 15 Cal.App.5th at p. 698, quoting *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1114 (*Briggs*), *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 134; see also *Park, supra*, 2 Cal.5th at p. 1060 [conduct constituting protected activity must "*itself* [be] the wrong complained of"]; see also *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1012 (*Bonni*) [affirming "gravamen test" "to determine whether particular acts alleged within the cause of action supply the elements of a claim . . . or instead are incidental background"].)

What conduct is "protected under the anti-SLAPP statute" turns "not [on] First Amendment law, but [rather on] the statutory definitions in . . . section 425.16, subdivision (e)." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422.) As pertinent here, subdivision (e) of section 425.16 defines protected activity to include "any written or oral statement or writing made before a . . . judicial proceeding" or "in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(1) & (2); *Briggs, supra*, 19 Cal.4th at p. 1115 [""'basic act of filing litigation or otherwise seeking administrative action'""; protected]; *Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 490 [statements made during witness preparatory interviews; protected].) In assessing whether a cause of action arises from protected activity, a trial court must consider "the pleadings" as well as the "supporting and opposing affidavits stating the facts upon which the liability or [a] defense is based." (§ 425.16, subd. (b)(2).) However, the pleadings are of primary importance because the plaintiff is the architect of her own complaint, such that the core injury-producing conduct at issue in a case is

7

primarily a function of "what is pled—not what is proven." (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 936-937; *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 942.)

**B.** *Anti-SLAPP law, as applied to legal malpractice claims*

Claims for, or resting upon, allegations of legal malpractice often arise in the context of litigation before judicial bodies. However, such a claim does not qualify as "protected activity" under the anti-SLAPP law merely because the plaintiff chooses to label the claim as one for legal malpractice (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 811 (*Bergstein*)), because the claim is "related to or associated with . . . litigation activities" (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 729 (*Freeman*); *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 630 (*Jespersen*)), or because "some . . . allegations [supporting that claim] refer to the attorney's actions in court" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1275 (*Hylton*)). Instead, a malpractice claim qualifies as "protected activity" only when the "specific acts of wrongdoing" alleged as the basis for the legal malpractice claim are the attorney's written and oral statements to a judicial body (§ 425.16, subd. (e)(1)) or the attorney's "communicative acts" made "as part of [his or her] representation of [the] client" (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480 (*Cabral*)).

Consequently, where a legal malpractice claim is based upon an attorney's initiation or prosecution of legal proceedings (as it necessarily is in a claim for abuse of process or malicious prosecution), that claim is based upon protected activity and the anti-SLAPP law applies. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 [malicious prosecution claim based

8

upon prosecution of prior lawsuit]; *Area 55, LLC v. Nicholas & Tomasevic* (2021) 61 Cal.App.5th 136, 151 [same]; *Summerfield v. Randolph* (2011) 201 Cal.App.4th 127, 136 [same]; *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [abuse of process claim based on filings]; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 907-908 [filing lawsuit]; *Cabral*, *supra*, 177 Cal.App.4th at p. 479 [same]; *Bergstein*, *supra,* 236 Cal.App.4th at pp. 811-813 [use of confidential information to prosecute lawsuit]; *Finato v. Keith A. Fink & Associates* (2021) 68 Cal.App.5th 136, 229, 233 [breach of contract based on law firm's attorney fees lien on settlement reached by former client after law firm stopped representing former client].)  The same is true when the claim is based upon the attorney's statements made in preparation for, or contemplation of, filing a lawsuit (*Briggs*, *supra*, 19 Cal.4th at p. 1115; *Mindy's Cosmetics, Inc. v. Dakar* (9th Cir. 2010) 611 F.3d 590, 597-598 [filing trademark application]), based upon the attorney's statements to the judicial body or opposing counsel in the response to litigation (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 409; *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1166-1167; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton* (2005) 133 Cal.App.4th 658, 671 (*Peregrine Funding*)), or based upon the attorney's statements to the opposing side during settlement negotiations (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89-90 (*Navellier*); *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 907-908; *O&C Creditor Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 568; *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113-114).

9

Conversely, where the "specific acts of [alleged] wrongdoing" by an attorney—whether the resulting claim be labeled as a claim for professional negligence, a breach of contract, or a breach of fiduciary duty—do not involve protected activity, the anti-SLAPP law does not apply. Thus, an attorney's representation of a client while laboring under a conflict of interest in violation of his or her ethical duties does not, without more, involve protected activity. (*PrediWave*, *supra*, 179 Cal.App.4th at pp. 1226-1227; *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1189 (*Benasra*); *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496, 504-505 (*Loanvest*); *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702 (*Chodos*); *Freeman*, *supra*, 154 Cal.App.4th at pp. 729-730, 732 (*Freeman*); *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 493 (*Castleman*); *Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 150-151 (*Sprengel*).) An attorney's dispensing of allegedly "bad" legal advice also does not, without more, involve protected activity. (*Hylton*, *supra*, 177 Cal.App.4th at pp. 1273-1274; *Peregrine Funding*, *supra*, 133 Cal.App.4th at p. 670.) And an attorney's failure to comply with his or her statutory obligations in litigation does not, without more, involve protected activity. (*Jespersen*, *supra*, 114 Cal.App.4th at p. 632.)

## II.    Analysis

Applying this precedent, the trial court correctly determined that plaintiffs' claims did not arise from protected activity. As noted above, the two "specific breaches" plaintiffs identify—and which underlie all of their claims—are defendants' alleged conduct in (1) representing Dana while the *Seifert* matter was ongoing, which constituted a conflict of interest because defendants were also representing her adversary in that matter,

10

and (2) giving her bad advice to continue pursuing her reformation petition despite the risk that it might trigger the Trust's no-contest clause and have other consequences adverse to plaintiffs' interests.  As explained above, legal malpractice claims based on each of these breaches—working under a conflict of interest and dispensing bad legal advice—are not protected activity under the anti-SLAPP law because they fall outside the definition of protected activity set forth in section 426.15, subdivision (e)(2).[5]  (*PrediWave*, *supra*, 179 Cal.App.4th at pp. 1226-1227; *Benasra*, *supra*, 123 Cal.App.4th at p. 1189; *Loanvest*, *supra*, 235 Cal.App.4th at pp. 504-505; *Chodos*, *supra*, 210 Cal.App.4th at p. 702; *Freeman*, *supra*, 154 Cal.App.4th at pp. 729-730, 732; *Sprengel*, *supra*, 241 Cal.App.4th at pp. 150-151; *Hylton*, *supra*, 177 Cal.App.4th at pp. 1273-1274.)

Defendants respond with what boil down to three arguments.

First, defendants urge us to reject the entire line of cases holding that legal malpractice claims are sometimes not protected activity.  According to defendants, these cases must be rejected because they have adopted a "categorical exception" exempting *all* legal malpractice claims from the ambit of the anti-SLAPP law in derogation of our Supreme Court's holding in *Navellier*, *supra*, 29 Cal.4th at p. 92, that "[n]othing in the [anti-

---

**5** Defendants cite a handful of case involving conduct qualifying as protected activity because it involves publication of statements to the public at large under other portions of section 425.16, subdivision (e) (e.g., *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615; *Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 153), but none of plaintiffs' allegations deal with publication of speech in this fashion.

11

SLAPP law] categorically excludes any particular type of action from its operation." This is a strawman argument. That is because, contrary to what defendants strenuously assert, these cases do not categorically exempt malpractice claims from the anti-SLAPP law. To be sure, some of these cases include overbroad language (e.g., *Chodos*, *supra*, 210 Cal.App.4th at p. 702 ["the anti-SLAPP statute does not apply to claims of attorney malpractice"]; *Sprengel*, *supra*, 241 Cal.App.4th at p. 151 [malpractice claims are "generally not subject" to the anti-SLAPP law]), but each case looks beyond the label of the claim at issue to examine whether the specific conduct alleged qualifies as protected activity. We have done the same here, and have concluded that the specific conduct underlying plaintiffs' claims is not protected activity. The fact that the trial court referred to the above-cited cases as creating a "limited exception" is of no consequence because we are reviewing the trial court's ruling, not its rationale. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 [noting "firmly established" rule that appellate courts review the trial court's ruling, not its rationale].) We accordingly also reject defendants' related contention that Dana is barred by the doctrine of judicial estoppel from urging us to adopt a categorical exception because she argued against such an exception in a different appeal.

Second, defendants assert that plaintiffs' claims rest on protected activity because (1) the complaint alleges that defendants "negligently and carelessly provided legal services and advice . . . which included . . . their filing of pleadings and other documents," and the act of filing documents with a court is protected activity; and (2) plaintiff's alleged injury was caused by the probate court's post-malpractice rulings removing Dana as

12

trustee and its potential future rulings disinheriting plaintiffs, surcharging Dana's interest in the Trust, and assessing Dana attorney fees, those orders and potential future orders reflect protected activity, and this protected activity is a necessary element of plaintiffs' claims because there can be no claim for malpractice "until the client suffers appreciable harm as a consequence of [the] attorney's negligence" (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 749-750). We reject these assertions. Defendants' focus on the general allegations in plaintiffs' complaint regarding filings ignores that the complaint goes on to identify the "specific breaches" underlying their claims; it is those "specific breaches" we have examined and have determined to fall outside the definition of protected activity. (See *Bonni, supra*, 11 Cal.5th at p. 1012 [distinguishing between conduct forming the "gravamen" of a claim and conduct that is "incidental background"]; *Jespersen*, *supra*, 114 Cal.App.4th at p. 630 [rejecting similarly "narrow construction of the complaint"].) The existence of errant and unnecessary additional allegations does not alter our analysis. And defendants' injury-based argument is effectively a covert plea to jettison the line of cases upon which we rely and which recognize that legal malpractice often rests on nonprotected activity; because clients who are the victims of legal malpractice are typically injured by subsequent court rulings tainted by that malpractice, to hold that those subsequent rulings convert a malpractice claim into protected activity is to erect a categorical rule that all malpractice claims involve protected activity regardless of the conduct underlying them. (See *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 576 [anti-SLAPP cannot be used to "insulate" all malpractice claims].) Further,

13

this argument ignores that the pertinent statutory definition of protected activity turns on whether *a litigant* makes a statement in connection with a pending judicial proceeding—not on whether *the court itself* issues a ruling.  (§ 425.16, subd. (e)(2).)

Third, defendants attack the merits of plaintiffs' claims on a number of grounds—namely, that defendants cannot be liable for legal malpractice because (1) Dana (in her individual capacity) and Trentyn were never their clients, (2) another law firm handled the court filings for the *Seifert* matter and the reformation proceedings, and (3) Dana herself is to blame for taking defendants' (allegedly bad) advice.  We need not delve into these arguments because these "merits based arguments have no place in [the] threshold analysis of whether plaintiffs' causes of action arise from protected activity."  (*Freeman*, *supra*, 154 Cal.App.4th at p. 733; *Sprengel*, *supra*, 241 Cal.App.4th at p. 156 [whether there is an "attorney-client relationship" "improperly conflate[s] the first and second prongs" of anti-SLAPP analysis].)

\*      \*      \*

In light of our analysis, we have no occasion to reach the second step of the anti-SLAPP analysis regarding whether plaintiffs established that their claims have "minimal merit."

14

## DISPOSITION

The order is affirmed.  Plaintiffs are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

15