Filed 9/27/22  Peterson v. Mojdehi CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KIM PETERSON et al., | D078461 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2020-00024427-CU-PN-CTL) |
| ALI M.M. MOJDEHI et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed in part, reversed in part, and remanded with directions.

White & Amundson and Steven G. Amundson for Defendant and Appellant Ali M.M. Mojdehi.

Pettit Kohn Ingrassia Lutz & Dolin, Douglas A. Pettit, Matthew C. Smith, Jennifer N. Lutz and Caitlin M. Jones for Defendant and Appellant Barnes & Thornburg LLP.

TencerSherman, Philip C. Tencer and Corrin M. Johnson for Plaintiffs and Respondents.

Kim Peterson and Kim Funding, LLC, a company Peterson manages, sued Ali M.M. Mojdehi and his law firm for professional negligence and breach of fiduciary duty.  Peterson and Kim Funding alleged that Mojdehi used in later business dealings with others confidential information Mojdehi had learned while he represented Peterson, represented in a bankruptcy case clients with interests adverse to those of Peterson and Kim Funding, and harmed Peterson's reputation.  Mojdehi and his law firm filed a special motion to strike the complaint as a strategic lawsuit against public participation (SLAPP) on the grounds it arose from protected litigation activity and lacked merit.  The trial court ruled the action arose from breaches of professional obligations, not litigation in the bankruptcy case, and denied the motion.  We conclude Mojdehi and his law firm met their burden to show the action arose, in part, from protected litigation activity and Peterson and Kim Funding did not meet their burden to show the action had merit to the extent it arose from that activity.  We therefore affirm in part and reverse in part the trial court's order.

I.

BACKGROUND

A.    *Peterson's Relationship with Mojdehi*

Peterson and Mojdehi became friends in 2006 when they served together on the board of trustees of the school their children attended.  From 2012 through 2014, while Mojdehi was a partner at the law firm of Cooley LLP, Peterson hired Mojdehi to represent Kim Media LLC, a company Peterson managed, in several bankruptcy matters.  Peterson and Mojdehi signed an engagement agreement for this representation.  Mojdehi also did legal work for Peterson in 2012 on a personal loan he had made to an entity

2

that later filed for bankruptcy. Peterson paid Cooley approximately $118,000 for this work.

B.     *The Liquor License Lending Platform*

In April 2014, Peterson formed Kim Funding LLC for the sole purpose of providing capital to a lending platform for liquor license applicants. Peterson owned 99 percent of Kim Funding and was its sole manager. In August 2014, he contacted Mojdehi about the platform and shared confidential information about his stake in the platform and the language of the escrow agreements used in the lending process. Peterson also requested advice on whether Kim Funding would be able to retrieve loan funds it had put in escrow if the borrowing liquor license applicant were to file for bankruptcy. Another attorney at Cooley responded to the inquiry by e-mail to Peterson, with a copy to Mojdehi, and suggested certain language be included in the escrow agreement so that Kim Funding could retrieve the loan funds if the borrower filed for bankruptcy. Mojdehi did not provide Peterson an engagement agreement for this work.

Between December 2015 and July 2019, two companies owned or managed by members of Mojdehi's family, L'Audace, LLC, and ABPS, LLC, loaned a total of $7,750,000 to Kim Funding for investment in the liquor license lending platform. At the request of his son, Mojdehi reviewed the loan documents sent by Peterson and suggested changes. Peterson personally guaranteed the loans.

Mojdehi left Cooley and joined Barnes & Thornburg LLP in April 2018. Between August 2018 and June 2019, Mojdehi himself loaned a total of $475,000 from a retirement account to Kim Funding for investment in the liquor license lending platform. Peterson personally guaranteed the loans. After joining Barnes & Thornburg, Mojdehi also provided Peterson legal

3

advice on an oil company restructuring deal that was never completed. Barnes & Thornburg did not enter into a retainer agreement with Peterson or Kim Funding and did not bill either for any services.

In August 2019, Peterson and Mojdehi learned the liquor license lending platform was a Ponzi scheme and its founder had been charged with securities fraud. The Securities and Exchange Commission later froze all platform assets and ordered a receiver to conduct an accounting. Mojdehi repeatedly demanded additional security from Peterson and threatened to force him and Kim Funding into bankruptcy if he did not agree to the demands.

C.    *The Involuntary Bankruptcy Petitions*

In September 2019, L'Audace, LLC, ABPS, LLC, and other entities that had loaned money to Kim Funding for investment in the liquor licensing lending platform filed involuntary petitions against Peterson and Kim Funding in the United States Bankruptcy Court for the Southern District of California. Mojdehi and Barnes & Thornburg represented the petitioners. On joint motions of Peterson, Kim Funding, and the petitioning creditors, the bankruptcy court dismissed the petitions in February 2020.

D.    *The State Court Litigation*

In July 2020, Peterson and Kim Funding (hereafter collectively Peterson) filed a complaint against Mojdehi and Barnes & Thornburg (hereafter collectively Mojdehi) in the superior court for professional negligence and breach of fiduciary duty. Peterson alleged Mojdehi breached the standard of care and attorney-client ethical obligations when, without first making the required disclosures and obtaining informed consent and waivers of conflicts of interest, Mojdehi used confidential information he had learned while representing Peterson for the financial benefit of himself and

4

family members and for the benefit of the petitioning creditors in the involuntary bankruptcy proceedings. Peterson alleged the bankruptcy petitions were frivolous and were maliciously filed to harm him. Peterson further alleged Mojdehi and his son repeatedly attacked Peterson's character and reputation in telephone calls to a co-plaintiff in Peterson's lawsuit against the escrow company involved in the liquor license lending platform, and urged the co-plaintiff to drop out of that lawsuit and to join the one that L'Audace, LLC, ABPS, LLC, and others had filed against the escrow company and Peterson. Peterson complained Mojdehi's breaches of the standard of care and fiduciary duties caused him to incur expenses to defend the bankruptcy proceedings, to lose a favorable business opportunity due to the negative impact of the proceedings on his credit report, and to suffer harm to his reputation. For relief, Peterson sought to recover the attorney fees he incurred in the involuntary bankruptcy proceedings; damages for the lost business opportunity and the harm to his credit and business reputation; damages for injury to his reputation in the financial and business community; disgorgement of attorney fees collected by Mojdehi while he had conflicts of interest and committed gross ethical misconduct; indemnity for any liability to which Peterson may be exposed as a result of Mojdehi's conflicts of interest and unethical conduct; punitive damages; interest; and costs.

Mojdehi filed an anti-SLAPP motion against the entire complaint. (Code Civ. Proc., § 425.16.) He argued the claims for professional negligence and breach of fiduciary duty arose from constitutionally protected petitioning activity because the filing of the involuntary bankruptcy petitions was the "principal activity" of which Peterson complained and the "primary source" of the alleged damages. Mojdehi further argued Peterson could not prevail on

5

the claims because he could not establish essential elements, including an agreement to represent him in connection with the liquor license lending platform, and the claims were barred by the litigation privilege (Civ. Code, § 47, subd. (b)) and the Bankruptcy Code (11 U.S.C. § 303(i)). In support of the motion, Mojdehi submitted a declaration describing his relationship with Peterson and his (Mojdehi's) and his family's involvement in the liquor license lending platform, the involuntary bankruptcy petitions, and other litigation related to the platform.

In opposition to the motion, Peterson argued the complaint was not subject to the anti-SLAPP statute, because it was based on legal malpractice and breaches of fiduciary duties, not on the filing of the involuntary bankruptcy petitions, although he conceded "protected litigation activity feature[d] prominently in the factual background." Peterson further argued he could establish the essential elements of his claims and they were not barred by the litigation privilege or the Bankruptcy Code. As part of the opposition, Peterson submitted his own declaration describing his relationship with Mojdehi and involvement in the liquor license lending platform and the involuntary bankruptcy proceedings. Peterson also submitted a declaration from an experienced bankruptcy lawyer, who expressed opinions that Mojdehi breached his duty of loyalty to Peterson by representing clients with interests adverse to Peterson's in connection with the liquor license lending platform, that Mojdehi's conflicts of interest were imputed to Barnes & Thornburg, and that the Bankruptcy Code did not preempt Peterson's claims for breach of duties owed to him as a former client of Mojdehi.

The trial court denied the anti-SLAPP motion. The court ruled Mojdehi did not meet his burden to show the complaint arose from protected activity,

6

because "the gravamen of the complaint is not the petitioning activity," i.e., the filing of the involuntary bankruptcy petitions on behalf of clients with interests adverse to Peterson's, "but rather [Mojdehi's] decision to undertake the adverse representation in the first place." In light of that ruling, the court further ruled the burden did not shift to Peterson to show a probability of prevailing.

## II.

## CONTENTIONS ON APPEAL

Mojdehi urges us to reverse the trial court's order denying the anti-SLAPP motion. He complains the trial court erred by ruling he did not meet his burden to show Peterson's complaint arose from activity protected by the anti-SLAPP statute. Mojdehi contends the filing of the involuntary bankruptcy petitions is protected activity and the complaint arose from that activity because it allegedly caused all the injuries of which Peterson complained. Mojdehi further contends the anti-SLAPP statute applies to causes of action that allege both protected and unprotected activity and does not exempt from its scope legal malpractice cases based on alleged conflicts of interest. He also complains the court erred by failing to shift the burden to Peterson to show a probability of prevailing on the claims and urges us to decide in the first instance whether he met that burden. Mojdehi contends Peterson cannot meet his burden, because he cannot establish the duty, breach, or causation elements of his claims and because the litigation privilege and the Bankruptcy Code provide complete defenses to the claims.

Peterson asks us to affirm the trial court's order. He argues his complaint is not a SLAPP subject to a special motion to strike, because the basis of his claims is not constitutionally protected petitioning activity (i.e., filing involuntary bankruptcy petitions), but rather unprotected breaches of

7

the standard of care and fiduciary duties (i.e., disclosing confidential information obtained from a client and representing clients with interests adverse to those of a former client in a related matter).  As an alternative basis to affirm the order, Peterson argues he has a probability of prevailing on his claims because he submitted evidence to establish their essential elements and because neither the litigation privilege nor the Bankruptcy Code bars the claims.

III.

DISCUSSION

We begin with the anti-SLAPP statute:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (Code Civ. Proc., § 425.16, subd. (b)(1).)  Ruling on an anti-SLAPP motion involves a two-step process.  The court first must decide whether the defendant has shown the challenged claim arises from activity protected by section 425.16, and if the defendant has done so, the court then must decide whether the plaintiff has shown a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; *Sugarman v. Brown* (2021) 73 Cal.App.5th 152, 159.)  Only a claim that both arises from protected activity and lacks merit is a SLAPP subject to being stricken under section 425.16.  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*);  *Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 282 (*Weeden*).)

We review a ruling on an anti-SLAPP motion de novo and engage in the same two-step process as the trial court.  (*Park v. Board of Trustees of*

8

*California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Weeden, supra,* 70 Cal.App.5th at p. 282.)

A.      *Step One:  Arising from Protected Activity*

We first consider whether Peterson's claims against Mojdehi "aris[e] from" activity protected by the anti-SLAPP statute.  (Code Civ. Proc., § 425.16, subd. (b)(1).)  "A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park, supra,* 2 Cal.5th at p. 1062.)  The filing of an action in response to or in retaliation for protected activity does not mean the action arose from that activity for purposes of the anti-SLAPP statute.  (*Navellier, supra,* 29 Cal.4th at p. 89; *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 804.)  "[T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech."  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)  "Neither the form of the complaint nor the primary right at stake is determinative."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 395 (*Baral*).)  Further, an entire cause of action need not be based on protected activity to be targeted; rather, "particular alleged acts giving rise to a claim for relief may be the object of an anti-SLAPP motion."  (*Ibid.*, italics omitted.)[1]  Thus, in the first step of the anti-SLAPP

---

[1]      Mojdehi is therefore correct in asserting that claims alleging legal malpractice or conflicts of interest are not categorically exempt from the anti-SLAPP statute, and that the statute applies to so-called "mixed causes of action" containing both allegations of activity protected by the statute and allegations of unprotected activity.  "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning."  (*Navellier, supra,* 29 Cal.4th at p. 92.)  Hence, regardless of the label assigned to a cause of action, "[i]f the supporting allegations include conduct furthering the defendant's exercise of the constitutional rights of free speech or petition, the

analysis, the court must consider the elements of the challenged claim and the conduct of the defendant underlying those elements as alleged in the complaint, with a focus on the injury-producing conduct. (*Park*, at p. 1063; *Callanan v. Grizzly Designs, LLC* (2022) 81 Cal.App.5th 517, 526; *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883.)

The challenged claims in this case are professional negligence and breach of fiduciary duty. The elements of a professional negligence claim are: (1) a duty to use that degree of skill, prudence, and diligence as is commonly possessed by members of the profession; (2) breach of the duty; and (3) injury proximately caused by the breach. (*Knapp v. Ginsberg* (2021) 67 Cal.App.5th 504, 525.) The elements of a breach of fiduciary duty claim are similar: (1) existence of a fiduciary relationship; (2) breach of a duty arising from the relationship; and (3) injury proximately caused by the breach. (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 932 (*Gutierrez*).)[2] Here, the alleged

---

pleaded cause of action 'aris[es] from' protected activity, at least in part, and is subject to [a] special motion to strike." (*Baral, supra*, 1 Cal.5th at pp. 381-382.)

[2] The attorney-client relationship is a fiduciary one that imposes on the attorney duties of confidentiality and loyalty to the client. (*Gutierrez, supra*, 194 Cal.App.4th at p. 932; *Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285, 1293.) The duty of confidentiality requires the attorney "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." (Bus. & Prof. Code, § 6068, subd. (e)(1).) The duty of loyalty requires the attorney " 'to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent.' " (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 548.) Both duties survive termination of the attorney-client relationship. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Thus, an attorney "may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of

conduct underlying these elements includes the following:  (1) Mojdehi's taking on representation of L'Audace, LLC, ABPS, LLC, and other entities with interests adverse to those of Peterson regarding the liquor license lending platform on which Mojdehi had previously advised Peterson; (2) Mojdehi's use of Peterson's confidential business information about the lending platform in business dealings to benefit himself, family members, and entities with interests adverse to Peterson's; (3) Mojdehi's malicious institution of frivolous involuntary bankruptcy proceedings against Peterson; and (4) Mojdehi's attacks on Peterson's character and reputation in telephone calls to a co-plaintiff of Peterson in litigation arising out of the liquor license lending platform, all of which allegedly caused Peterson financial harm.

Numerous courts have concluded that an action alleging an attorney's breach of professional and fiduciary duties to a client is not a SLAPP, even though the breaches relate in part to constitutionally protected litigation activity.  For example, in *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, the court concluded the plaintiffs' claims against their former attorneys for breaching the duty of loyalty by subsequently representing an adverse party arose from violations of rules of professional conduct, not from protected litigation activity.  The court reasoned that "once the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty.  The breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it."  (*Id.* at p. 1189.)  Following the *Benasra* court's reasoning, this court reversed an order granting an anti-SLAPP

the previous relationship."  (*Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-574.)

11

motion, and ruled claims for negligence and breach of fiduciary duty against an attorney for abandoning former clients to represent adverse parties in related litigation did not arise from protected activity. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 727-734 (*Freeman*).) Several later cases similarly held lawsuits alleging attorneys committed professional negligence and breached fiduciary duties owed to former clients by subsequently representing other clients with adverse interests were not based on conduct protected by the anti-SLAPP statute. (See, e.g., *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628 (*United States Fire Ins. Co.*); *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 493 (*Castleman*); *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496, 504; *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 314 (*Wittenberg*); see also *Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 151-155 (*Sprengel*) [collecting cases].) " 'The reason is that the lawsuit concerns a breach of duty that does not depend on the exercise of a constitutional right.' " (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702.) Because such a lawsuit does not threaten to chill the exercise of constitutionally protected rights, which is the stated concern of the anti-SLAPP statute (Code Civ. Proc., § 425.16, subd. (a)), "the first prong of the anti-SLAPP analysis is not satisfied" (*Loanvest*, at p. 504).[3]

---

[3] Mojdehi points out some of the cited cases used a "gravamen" or "principal thrust" approach to determine whether a cause of action arose from protected activity (see, e.g., *United States Fire Ins. Co.*, *supra*, 171 Cal.App.4th at pp. 1625, 1628, 1629, fn. 9; *Freeman*, *supra*, 154 Cal.App.4th at pp. 728, 732), an approach our Supreme Court later disapproved (see pp. 16-17, *post*). We of course do not rely on the cases as support for use of that approach, which we have not used in conducting the first step of the anti-SLAPP analysis. Rather, we cite the cases as support for our conclusion that Mojdehi's alleged breaches of the standard of care and of the duties of loyalty and confidentiality are not acts protected by the anti-SLAPP statute

12

Under this line of cases, Peterson's claims are, in part, not subject to being stricken under the anti-SLAPP statute. As a recent case explained, an attorney's "alleged acts of representing clients with interests adverse to his former client and using [that client's] confidential information in the new representation do not constitute protected activity under the anti-SLAPP law. Such causes of action arise from [the attorney's] alleged breaches of his fiduciary and professional obligations . . . . There is no chilling effect on advocacy in such claims; rather, the threat of liability encourages the attorney to act competently and loyally." (*Wittenberg, supra,* 50 Cal.App.5th at p. 314.) We thus conclude Peterson's allegations that Mojdehi accepted representation of new clients with interests adverse to Peterson's; used confidential information obtained from Peterson to benefit himself, family members, and new clients in business dealings; and attacked Peterson's character and reputation in conversations with his co-plaintiff in a lawsuit arising out of the matter on which Mojdehi had advised Peterson, are not subject to being stricken under the anti-SLAPP statute insofar as these allegations do not concern the involuntary bankruptcy proceedings.

Mojdehi argues the line of cases we have relied on does not support denial of his anti-SLAPP motion. He urges us to "look[ ] past the conclusory allegations of a stale and/or non-existent attorney-client relationship to the injury-producing conduct at issue" and to conclude the claims are subject to being stricken. Mojdehi argues the cases discussed above are inapplicable because: (1) there is no "tenable" allegation he breached the standard of care during any representation of Peterson; (2) he neither simultaneously nor successively represented Peterson and other clients with adverse interests in

_to the extent the breaches do not involve the prosecution of the involuntary_ _bankruptcy proceedings._ As we shall explain later, prosecution of the bankruptcy proceedings _is_ protected activity. (See pp. 14-16, _post._)

13

the same or related matters; (3) he did not use confidential information obtained from Peterson against him; and (4) Peterson is not entitled to the nonspecific or speculative remedies of disgorgement, indemnity, and punitive damages he seeks for the conduct we have concluded is not protected by the anti-SLAPP statute. These arguments improperly conflate the first and second steps of the anti-SLAPP analysis. Mojdehi's "merits based arguments have no place in our threshold analysis of whether [Peterson's] causes of action arise from protected activity." (*Freeman*, *supra*, 154 Cal.App.4th at p. 733; see *Castleman*, *supra*, 216 Cal.App.4th at p. 493 ["We do not consider the veracity of respondents' allegations in determining whether their claims arise from protected speech or petitioning activity."].) Although Mojdehi ultimately may defeat Peterson's claims by proving the absence of an attorney-client relationship or some other essential element of the claims, that prospect does not affect our analysis at step one. (See *Sprengel*, *supra*, 241 Cal.App.4th at p. 157.) "At the first step, we merely identify the acts supplying the elements of the challenged causes of action [citation], and to that end, it is sufficient that [Peterson] alleges [he] was harmed by [Mojdehi's] breaches of his professional obligations of loyalty and confidentiality." (*Wittenberg*, *supra*, 50 Cal.App.5th at p. 314.)

We reach a different conclusion regarding the allegations that Mojdehi harmed Peterson by filing the involuntary bankruptcy petitions. Conduct by an attorney in judicial proceedings is petitioning activity protected by the anti-SLAPP statute. (Code Civ. Proc., § 425.16, subd. (e)(1), (2); *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; *Wittenberg*, *supra*, 50 Cal.App.5th at p. 312.) "Filing a lawsuit is an act in furtherance of the constitutional right of petition, regardless of whether it has merit." (*JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1521.) Hence, allegations an attorney

14

maliciously filed a frivolous judicial proceeding against the plaintiff are subject to an anti-SLAPP motion. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735 (*Jarrow*); *Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589, 598.) Peterson's complaint contains such allegations.

In one paragraph, Peterson alleged:

"The involuntary bankruptcy petitions masterminded by Defendants and filed against Plaintiffs were premature, and maliciously filed in bad faith to harm Plaintiffs. . . . As an experienced expert in bankruptcy law, Ali Mojdehi and Defendants knew or should have known that the involuntary bankruptcy petitions were filed prematurely and in bad faith as the statutory provisions of 11 U.S.C. § 303(b)(1) were not satisfied before the filings. . . . The fact that Defendants advised their petitioning clients to abandon the bankruptcy petitions, against Plaintiffs indicates the frivolous and malicious nature of the petitions. Therefore, it is alleged that the bankruptcy petitions were filed with malicious intent, in bad faith, and perpetrated against Plaintiffs with recklessness and oppression for the purpose of causing Plaintiffs stress, damaged reputation with investors and creditors, attorney fees, court costs, damaged credit and the resulting effects of damaged credit including but not limited to higher interest rates on loans, calls on loans and other financial harm to Plaintiffs['] credit and reputation which is very important to Plaintiffs' businesses. . . . It is alleged that based on their conduct, Defendants intended to harm Plaintiffs and did harm Plaintiffs financially by filing frivolous involuntary bankruptcy petitions in violation of multiple Rules of Professional Conduct, Model Rules of Professional Conduct, California and Federal Bankruptcy Laws. As a result of Defendants' unethical and reckless bad faith conduct, [Plaintiffs] incurred in excess of $475,000 in attorney fees and costs defending against the involuntary bankruptcy petitions before Defendants dismissed the petitions."

In other paragraphs, Peterson alleged he "suffered additional financial harm as a result of having the involuntary Chapter 7 bankruptcy appear on credit reports," and as an example he asserted he lost an airplane financing deal when the other party learned about the bankruptcy proceedings. As remedies for Mojdehi's allegedly malicious filing of the frivolous involuntary

15

bankruptcy petitions, Peterson sought to recover the attorney fees and costs incurred in defending the petitions, damages for the lost deal, damages for the harm to his credit and business reputation, and punitive damages.

To the extent Peterson seeks relief based on these allegations that Mojdehi maliciously prosecuted the bankruptcy proceedings, his complaint arises from constitutionally protected petitioning activity. "The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215.) The allegations concerning the bankruptcy proceedings are therefore subject to an anti-SLAPP motion. (*Jarrow*, *supra*, 31 Cal.4th at pp. 734-735.)

Peterson contends the allegations concerning the bankruptcy filings are not subject to being stricken because they are not the " ' "principal thrust" or "gravamen" ' " of the claims. Rather, he says, they are " 'only collateral or incidental' " to the breach of professional duties underlying the claims and are "evidence to show the breach and the resulting harm." (Italics omitted.) We disagree.

Our Supreme Court has disapproved the "principal thrust" or "gravamen" approach urged by Peterson because it "risk[s] saddling courts with an obligation to settle intractable, almost metaphysical problems about the 'essence' of a cause of action that encompasses multiple claims." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011 (*Bonni*).) The Supreme Court has instead instructed courts ruling on anti-SLAPP motions that attack causes of action based on multiple acts to analyze *each act supplying a basis for relief* to determine whether or not the *act* is a protected activity and, if so, whether the plaintiff has shown a probability of prevailing on the claim.

16

(*Bonni*, at p. 1010; *Baral, supra*, 1 Cal.5th at pp. 393-395.)  The court must conduct this analysis "even though the [defendant] sought to strike the entire cause of action, rather than merely parts of it."  (*Bonni*, at p. 1011.)  Under the prescribed analysis, allegations of protected activity that are " 'merely incidental' or 'collateral' " or that "merely provide context, *without supporting a claim for recovery*, cannot be stricken under the anti-SLAPP statute." (*Baral*, at p. 394, italics added; accord, *Bonni*, at p. 1012.)

As discussed above, Peterson seeks compensatory and punitive damages, attorney fees, and costs for injuries allegedly caused by Mojdehi's filing of the involuntary bankruptcy petitions.  Such allegations are not merely "incidental background" to provide context for the claims (*Bonni*, *supra*, 11 Cal.5th at p. 1012) and do not merely "provide evidence of the alleged breaches of fiduciary duty" (*Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 880, italics omitted [breach of fiduciary duty claim arose from trustees' wrongful plan to retain control of trust, not from litigation activity by which plan was carried out]).  Rather, the allegations that Mojdehi maliciously filed frivolous bankruptcy petitions "supply the elements of [the] claim[s]."  (*Bonni*, at p. 1012.)  Because "allegations of protected activity . . . are asserted as grounds for relief," they are subject to an anti-SLAPP motion.  (*Baral, supra*, 1 Cal.5th at p. 395, italics omitted; see *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 673 [allegations clients suffered substantial losses as result of attorneys' litigation activity not merely incidental or collateral to claims of legal malpractice and aiding and abetting breach of fiduciary duty].)

In sum, to the extent Peterson's claims are based on conduct *other than Mojdehi's prosecution of the involuntary bankruptcy proceedings*, the claims do not arise from activity protected by the anti-SLAPP statute and are not

17

subject to being stricken under the statute regardless of Peterson's probability of prevailing on the claims. (See *Xu v. Huang* (2021) 73 Cal.App.5th 802, 812 [if defendant does not meet burden to show claim arises from protected activity, court should deny motion and need not address merits].) But to the extent the claims are based on the prosecution of the bankruptcy proceedings, they do arise from protected activity and must be stricken unless Peterson has shown a probability of prevailing. (See *Wittenberg, supra*, 50 Cal.App.5th at p. 315 [when claims arise in part from protected litigation activity, burden shifts to plaintiff to show claims have merit to the extent they are based on that activity].)

## B. *Step Two: Probability of Prevailing*

Because the trial court ruled Peterson's complaint did not arise from constitutionally protected speech or petitioning activity, the court did not reach the second step of the anti-SLAPP analysis. In the interest of judicial economy, Mojdehi urges us to proceed to step two in the first instance rather than to remand the matter to the trial court to do so. Because the parties have briefed the second-step issues, our review is de novo, and it would waste judicial resources to remand the matter to the trial court to determine the issues, we shall proceed to step two and decide whether Peterson has shown a probability of prevailing on his claims insofar as they arise from Mojdehi's prosecution of bankruptcy proceedings. (See *Santa Clara Waste Water Co. v. County of Ventura Environmental Health Division* (2017) 17 Cal.App.5th 1082, 1091; *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1300.)

When deciding whether the plaintiff has met the second-step burden on an anti-SLAPP motion, we proceed as we do when reviewing a ruling on a summary judgment motion. (*Baral, supra*, 1 Cal.5th at p. 384.) We consider the pleadings and determine whether the plaintiff's evidence, accepted as

18

true, and the inferences reasonably drawn from that evidence suffice to sustain a judgment in favor of the plaintiff. (*Id.* at pp. 384-385; *Roche v. Hyde* (2020) 51 Cal.App.5th 757, 787.) We consider the defendant's evidence only to determine whether it defeats the challenged claim as a matter of law. (*Baral*, at p. 385.) If the defendant raises an affirmative defense, the plaintiff must show the defense is inapplicable as a matter of law or submit evidence that if accepted as true would negate the defense. (*Weeden, supra*, 70 Cal.App.5th at p. 288; *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 434.) Claims with " 'at least "minimal merit" ' " may proceed. (*Bonni, supra*, 11 Cal.5th at p. 1009.)

As we stated earlier, Mojdehi argues Peterson's claims for professional negligence and breach of fiduciary duty do not have the requisite minimal merit because Peterson cannot establish the existence of an attorney-client relationship or other essential elements of the claims. Mojdehi also argues the claims are barred by the litigation privilege and the Bankruptcy Code. As we shall explain, Peterson's claims are barred by the Bankruptcy Code. We therefore need not, and do not, consider Mojdehi's other arguments on step two.

The section of the Bankruptcy Code concerning commencement of involuntary cases provides:

> "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>> "(1) against the petitioners and in favor of the debtor for—
>>> "(A) costs; or
>>> "(B) a reasonable attorney's fee; or
>> "(2) against any petitioner that filed the petition in bad faith, for—
>>> "(A) any damages proximately caused by such filing; or
>>> "(B) punitive damages." (11 U.S.C. § 303(i).)

19

This statute "permits the bankruptcy court on dismissal of a petition to award a debtor costs, reasonable attorney's fees and any damages proximately caused by the taking of the debtor's property. If the involuntary petition is filed in bad faith the bankruptcy court has the additional power to award damages proximately caused by such filing and punitive damages." (*Gene R. Smith Corp. v. Terry's Tractor, Inc.* (1989) 209 Cal.App.3d 951, 954 (*Gene R. Smith Corp.*).) These are the remedies Peterson seeks for Mojdehi's allegedly malicious and bad-faith filing of frivolous involuntary bankruptcy petitions on behalf of clients with interests adverse to Peterson's.

Such remedies are available *only* from the bankruptcy court, however. As this court noted in ruling that an action for malicious prosecution of an involuntary bankruptcy proceeding was preempted by federal law:

> " 'Filings of bankruptcy petitions are a matter of exclusive federal jurisdiction. State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating.' " (*Gene R. Smith Corp.*, *supra*, 209 Cal.App.3d at pp. 953-954, quoting *Gonzales v. Parks* (9th Cir. 1987) 830 F.2d 1033, 1035.)

Quoting the same case, this court further noted:

> " 'Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits. Even the mere possibility of being sued in tort in state court could in some instances deter persons from exercising their rights in bankruptcy. In any event, it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be

20

utilized.' " (*Gene R. Smith Corp.*, at p. 954, italics omitted; accord, *Idell v. Goodman* (1990) 224 Cal.App.3d 262, 271.)

"A debtor who believes an involuntary petition was filed in bad faith has a comprehensive scheme of remedies available in the federal courts. The existence of this comprehensive scheme precludes collateral attacks on such filings in state courts." (*In re Miles* (9th Cir. 2005) 430 F.3d 1083, 1090 (*Miles*); see *In re Salmon* (Bankr. M.D.Fla. 1991) 128 B.R. 313, 315 ["Congress clearly created a remedy for malicious prosecution in the form of a bad faith filing of an involuntary petition in bankruptcy."]; *Pauletto v. Reliance Ins. Co.* (1998) 64 Cal.App.4th 597, 606 ["A party aggrieved by bad faith and malicious filings in bankruptcy court is limited to the remedies provided by the Federal Bankruptcy Code and the Federal Rules of Bankruptcy Procedure."].) "Permitting state courts to award damages against [creditors'] attorneys based on the filing of [an involuntary] bankruptcy petition would subvert exclusive federal jurisdiction in much the same manner as allowing similar awards against the [creditors]." (*Gonzales*, at pp. 1036-1037.) We therefore conclude Peterson's claims are preempted to the extent they seek remedies for Mojdehi's prosecution of the involuntary bankruptcy proceedings.

Peterson insists his claims are not preempted because they "are not for malicious prosecution and do not stem from the filing of bankruptcy petitions themselves." Instead, he says, the "claims for professional negligence and breach of fiduciary, confidentiality, and loyalty duties arose before and outside of the bankruptcy proceedings [and] are not jurisdictionally barred." We have already determined, however, that Peterson's claims arise *in part* from the bankruptcy filings (see pp. 14-16, *ante*), and it is only to that extent that Peterson must show a probability of prevailing to defeat the anti-SLAPP motion. He may not avoid this burden simply by referencing the labels he

21

chose to assign the claims. (See, e.g., *Ojjeh v. Brown* (2019) 43 Cal.App.5th 1027, 1035 ["we disregard the labels attached to the causes of action [citation] and consider their elements and what actions by the defendant supply those elements and consequently form the basis for liability"].) Regardless of their labels, the claims seek compensatory and punitive damages, attorney fees, and costs for Mojdehi's allegedly malicious filing of frivolous involuntary bankruptcy petitions. Because title 11 United States Code section 303(i) "completely preempts" such claims (*Miles, supra*, 430 F.3d at p. 1086), Peterson cannot show a probability of prevailing.

Peterson also contends his claims are not preempted because the involuntary bankruptcy petitions were dismissed "on consent of all petitioners and the debtor" (11 U.S.C. § 303(i)) and therefore the statutory remedies for bad faith filings were not available to him. He cites no case supporting this contention, and we reject it. "A condition to bringing a bad faith claim under [title 11 United States Code] section 303(i) is that the dismissal of the bankruptcy petition was 'other than on consent of all petitioners and the debtor,' " and thus "if the debtor and all other parties to an involuntary petition unequivocally consent to its dismissal, the language of section 303(i) bars a subsequent damage claim." (*In re R. Eric Peterson Const. Co., Inc.* (10th Cir. 1991) 951 F.2d 1175, 1178, fn. 4, 1181; accord, *In re Anmuth Holdings LLC* (Bankr. E.D.N.Y. 2019) 600 B.R. 168, 184.) As our colleagues in Division Three noted in the analogous context of an action against attorneys who maliciously prosecuted an adversary proceeding in a bankruptcy case, "Parties may not avail themselves of state court tort remedies to circumvent federal remedies for their opponents' alleged misuse of the bankruptcy process." (*Saks v. Parilla, Hubbard & Militzok* (1998) 67 Cal.App.4th 565, 573-574.) Here, Peterson expressly consented to dismissal

22

of the involuntary bankruptcy petitions and thereby gave up any remedies for bad faith filings, which were available only in the bankruptcy court. He may not pursue the same remedies in this state court action.

In sum, Peterson's claims for professional negligence and breach of fiduciary duty are preempted to the extent they seek relief for Mojdehi's filing of the involuntary bankruptcy petitions. Because the allegations concerning the filings arise from petitioning activity protected by the anti-SLAPP statute, they must be stricken from the complaint.[4]

---

[4] The allegations that must be stricken from the complaint are the following: the entirety of paragraphs 31, 32, 33, 34, 35, 36, 40, 41, 42, 63, 69, 71, 72, 76, and 77; and the references to "involuntary bankruptcy petitions," "bankruptcies," or "bankruptcy petitioners" in paragraphs 46, 50, 52, 53, 60. Exhibits 5 (the involuntary bankruptcy petitions), 6 (invoices for attorney fees incurred in the involuntary bankruptcy proceedings), and 7 (letter concerning airplane financing deal) must also be stricken.

IV.

DISPOSITION

The order denying the anti-SLAPP motion is reversed and the matter is remanded to the trial court with directions to enter a new order granting the motion in part, by striking the portions of the complaint alleging financial harm caused by the malicious filing of frivolous involuntary bankruptcy petitions (see fn. 4, *ante*), and otherwise denying the motion. The parties shall bear their own costs on appeal.

IRION, Acting P. J.

WE CONCUR:

DATO, J.

BUCHANAN, J.

24